Joseph H. Harrington
Acting United States Attorney
Eastern District of Washington
Richard C. Burson
Assistant United States Attorneys
402 East Yakima Ave, Suite 210
Yakima, WA 98901
Telephone: (509) 454-4425

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRUCE WARREN SAMPSON, JR.<br><br>Defendant. | Case No.: 1:20-CR-02022-SMJ<br><br>GOVERNMENT'S SENTENCING MEMORANDUM<br><br>Sentencing Hearing:<br>August 24, 2021; 11:00 a.m. |

Plaintiff, United States of America, by and through Joseph H. Harrington, Acting United States Attorney for the Eastern District of Washington, and Richard C. Burson, Assistant United States Attorney for the Eastern District of Washington, submits the following United States' Sentencing Memorandum. For the reasons that follow, the United States respectfully recommends a sentence of 84 months imprisonment, with credit for time served, and three years of supervised release.

## I. Base Offense Level and Enhancements

The United States agrees with the sentencing guideline calculation, maximum penalty and criminal history calculations in the Draft Presentence Investigation Report, ECF No. 157. That is, a Base Offense Level of 14, plus 4 levels because a dangerous weapon was used in the commission of the assault, 5 levels because the victim sustained serious bodily injury, and 2 levels because the Defendant willfully obstructed justice by giving false testimony and lying to investigators, resulting in a Total Offense Level of 25. The United States also agrees with the criminal history category of III, as calculated by U.S. Probation. A total offense level of 25 and a criminal history category of III results in a guideline sentence of 70 to 87 months incarceration.

The first two enhancements – for using a dangerous weapon and inflicting serious bodily injury – coincide with the charges of conviction and the jury's unanimous findings that both of those elements were proven beyond a reasonable doubt by the government.

The third enhancement – for obstruction – is worthy of discussion. Most importantly, in order for the jury to have found the Defendant guilty of Count 1, Assault with a Dangerous Weapon, they would have had to conclude that the Defendant lied under oath during the following exchange:

<u>Mr. Webster</u>: Did you kick him [referring to victim]?

<u>Defendant</u>: No, I did not kick him.

ECF No. 147 at 15.

Similarly, the jury would have had to conclude that the Defendant lied during the following:

<u>Mr. Burson</u>: Because your testimony is you never kicked him, right?

<u>Defendant</u>: Yes.

*Id.* at 26.

Given the time the jury deliberated and the multiple questions asked during deliberations by the jury, and their request to examine the shoes in question, it is obvious that the jury seriously considered whether the Defendant kicked the victim wearing the shoes in evidence. And they unanimously rejected the Defendant's claim that he did not kick the victim. Whether the obstruction enhancement applies is decided by a preponderance of the evidence. Given that the jury found beyond a reasonable doubt that the Defendant lied under oath (otherwise they could not have rendered the verdict they did), the government agrees with the Probation Officer that the obstruction enhancement applies here.

And that is before consideration of the fact that the Defendant lied to investigating officers and an FBI Agent during the investigation of this matter. The Defendant lied to Officer Alexander and Officer Vanderhoof, saying to each that the Defendant had not been in his hotel room. He told Officer Vanderhoof

that the blood on his person was the result of a trip and fall the night before. *Id.* at 34. The Defendant told Special Agent Barefoot that he did not know anything about the assault on the victim.

It is also worth considering the Defendant's testimony as a whole and its believability. But the Court need not reach these questions to determine that the obstruction enhancement applies. The jury already determined that the Defendant lied under oath.

**II.     Departure**

The United States is not aware of any factors justifying a departure or variance from the guideline.

**III.    Section 3553(a) Factors for Sentencing**

      a.    <u>The Nature and Circumstances of the Offense</u>

The Defendant's motive for assaulting the victim here is unknown. But the impact on the victim is documented in the PSR and the testimony of Dr. Newton. In the immediate aftermath, the victim suffered eight broken ribs, bleeding of the brain and a broken orbital socket. ECF No. 157 ¶ 32. The effect of those injuries still linger, impeding his ability to earn a living. *Id.* at ¶ 32-35. The victim still struggles with the emotional impact. *Id.* at 33; 36.

Perhaps most chilling though is the callousness with which the Defendant acted in the aftermath of the assault. The Defendant denied responsibility

throughout. During his interview with Special Agent Barefoot, the Defendant feigned concern about the victim's well-being, but denied having anything to do with it, and shifted blame to unknown perpetrators (while also foregoing the opportunity to absolve his own brother, whom the Defendant knew full well was nowhere near the scene that night). Not once has the Defendant expressed remorse for his actions. That might be understandable, had the victim actually posed a threat to the Defendant's family. But the Defendant's testimony that the victim posed a threat to his family is unsubstantiated.

First, the jury rejected his self-defense and defense of others claim. At best, they found that, although the victim was partially culpable for the initial outbreak of violence, the Defendant went way too far. *See* ECF No. 132 (jury question asking the Court whether a one-sided fight where one person is unable to defend themselves can constitute assault, and whether self-defense can "transition" to an assault).

Second, the Defendant's claim that the victim pulled a knife on him is unbelievable. No knife has ever been found. The Defendant never mentioned a knife to investigators. The Defendant's description of the knife is inconsistent with that of his corroborating witness, The Defendant's explanation about the location of the knife is implausible. As the Defendant told it, he wanted to turn

the knife over to police, but instead gave it to a guy in a nearby park. But he cannot remember that guy's name.

Finally, there is the inconceivability that the Defendant engaged in mutual combat with a larger man who attacked first, and yet the Defendant walked away unscathed. Meanwhile, the larger man ended up being airlifted to Harborview Medical Center. That narrative is not only plausible – it is flat out unbelievable.

### b. The Defendant's Characteristics and History

This was not the first time the Defendant has entered the criminal justice system because of violent conduct. This was not a one-off event, although the Defendant's usual victim of choice is a domestic partner. In 2002, the Defendant was convicted of a domestic violence offense against J.M.H. ECF No. 157. ¶ 64-69. In 2003, the Defendant was convicted of two domestic violence offenses after the Defendant reportedly struck an unknown woman on the cheek, restrained her, and threatened self-harm if she left him. *Id.* ¶ 75-78. The victim had to flee her own apartment to call police. *Id.* ¶ 77.

Those early incidents cannot be brushed away as youthful hot-headedness, because the Defendant's conduct has not changed. In 2015, he was convicted of disorderly conduct after fighting with another male. *Id.* ¶ 117. Also in 2015, the Defendant was convicted of Assault and Battery in Tribal Court after reportedly joining with several other people in the beating of a man with a bat or metal

6

pole. *Id.* ¶ 139-141. In 2019, the Defendant was convicted of domestic violence assault after a physical altercation with C.R. *Id.* ¶ 127-132. C.R. apparently felt the need to obtain a restraining order. The Defendant was in the process of violating that restraining order when he was arrested for the instant offense. Recorded jail calls between C.R. and the Defendant include references to the Defendant assaulting C.R. and C.R.'s mother during incidents which apparently went unreported.

The instant assault was the inevitable next step in the Defendant's escalating violent nature. This was not an isolated incident. This incident encapsulates who the Defendant is: a person who commits violence unexpectedly and without remorse.

        c.  <u>The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and to Afford Adequate Deterrence</u>

Despite breaking a man's orbital socket and eight ribs, the Defendant does not believe he did anything wrong. That is clear from his testimony. His past convictions and arrests make it clear that he won't be deterred from acting violently absent significant incarceration. In crafting a sentence that will impart upon the Defendant the seriousness of this offense, the Court should forcefully reject the Defendant's assertion that he was justified in assaulting the victim. Otherwise, the Defendant will walk away undeterred. The Yakama community

will bear the risk that the Defendant will likely assault again. It will only be a matter of time. This will be the Defendant's sixth conviction involving assault. The first five convictions and their resulting punishments failed to deter the Defendant from committing this assault. As apparent from his testimony, those convictions did not even serve the basic task of convincing the Defendant that assaulting someone and sending them to the emergency room is a wrongful act.

This Court should attempt to finally convince the Defendant that his actions are wrongful, serious and unjustified. The Defendant's lack of remorse and criminal history make it clear that only a sentence at or near the top of the guideline will suffice.

**IV.    Conclusion**

For the reasons stated herein, the government respectfully recommends a sentence of 84 months incarceration and three years of supervised release.

Dated:  July 26, 2021.

Joseph H. Harrington
Acting United States Attorney

*s/ Richard C. Burson*
Richard C. Burson
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the Defendant's counsels of record.

*s/Richard C. Burson*
Richard C. Burson
Assistant United States Attorney
